UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

JAMES BOATENG,                           )
                                         )
        Plaintiff,                       )
                                         )
v.                                       )  Case # l:25-cv-472
                                         )
CARL S. MUNSEE                           )
Spotsylvania County Sheriff's Office     )
9119 Dean Ridings Lane                   )
Spotsylvania Courthouse, VA 22553        )
                                         )
        Defendant.                       )

AMENDED COMPLAINT

Preliminary and Jurisdictional Statement

1.  Plaintiff James Boateng is a teenager who, on December 21, 2023, at the age of

sixteen, was roused from his bed by Spotsylvania deputy sheriff Carl Munsee, arrested, and

baselessly charged with eleven criminal offenses, including three felonies, that he did not

commit and that there was no cause to believe he had committed.[1]  Based on defendant Munsee's

false representations to a local judicial official, James was detained and later ordered into home

confinement with the requirement that he wear an ankle monitor at all times, including school

where it was visible to others. James endured all this until February 1, 2024 when defendant

Munsee acknowledged that there was no evidence that James had been involved in any of the

offenses for which defendant Munsee had precipitously arrested him.  All eleven charges were

---

[1]The original complaint was drafted before James's 18th birthday–February 7, 2025.
Because the complaint was served after that date, it has been amended to reflect James's status
as an adult, and his father has been removed as next friend.

thereupon dismissed.  James Boateng now sues deputy Munsee for damages. This case arises

under the Fourth Amendment to the Constitution of the United States and 42 U.S.C. §1983.  This

court has jurisdiction under 28 U.S.C. §1331.  The court has supplemental jurisdiction pursuant

to 28 U.S.C. §1367 over James's claims under state law, which arise out of the facts giving rise

to his federal claims.

Parties

2.  Plaintiff James Boateng is eighteen years old.  He is black.  He lives with his father in

Fredericksburg, Virginia.  He is a polite and pleasant young man, a good student, and  – with the

exception of the matters giving rise to this suit – has never been in trouble with the law.  In

December 2023 he was in eleventh grade.  He was planning to attend college after graduating

from high school.

3.  Defendant Carl Munsee is and at all relevant times was a deputy sheriff in

Spotsylvania County, Virginia.  He is white.  He is sued in his individual capacity.

Claim for Relief

The Group Snapchat

4.  Around October 2023, James was added to an existing group on Snapchat by the

chat's creator, a fellow student at Courtland High School in Spotsylvania County.  He had not

asked to be included in the group chat, nor did he know in advance he was going to be added to

it.  There were about a half dozen participants in the group chat, some of whom were known to

James by name as fellow students. One member was a fellow student ML.

5.  James had little involvement in the group chat.  He used it to schedule and play synchronous video games with other group chat members. Beyond this he paid little, if any, attention to the messages posted.

6.  James did not socialize with any other participants in the group chat.

7. On the night of December 18th, James was at home playing video games until he went to sleep.

The Car Thefts

8. Meanwhile, at about 3:50 AM on December 19, 2023, police, including defendant Munsee, responded to a citizen's report about a potential car break in. While Deputy Munsee examined the area around the complainant's home, his colleague Deputy Myers apprehended one of three juveniles he had spotted running from him in a nearby subdivision. The detained juvenile was 16-year-old ML.[2]

9.  Deputies soon found two cars parked near the entrance to the subdivision where Deputy Myers had apprehended ML. The cars turned out to have been stolen. Inside each car were personal property the vehicle owners said did not belong to them.  Amongst these items, police located the cellphone of ML, who subsequently gave his pass code to Officer Munsee.

10.  With the phone unlocked, Officer Munsee located self-incriminating messages that, on information and belief, ML had sent earlier that night to the group Snapchat. When Officer Munsee opened the Snapchat group, there were only four members: James Boateng, ML,, ER, and AM. By reason of their having received these incriminating messages, Officer Munsee

---

[2]ML's full name is known to defendant Munsee and appears in his reports.

concluded that the three other group members, including James, had knowledge of the thefts and were therefore involved. On this basis, at 11:05 AM on December 19th, only seven hours after the initial police call, Officer Munsee applied for a petition for James's arrest with the Spotsylvania County Juvenile and Domestic Relations District Court.[34]

11. The fact that James did not leave his house the night prior, and thus could not have been involved in the events for which ML had been arrested, was easily verifiable by viewing video from home security surveillance cameras his father had installed at their home, information his father would later provide the prosecution and lead to the prompt dismissal of all charges against James.

Deputy Munsee's "Probable Cause"

12. Until he expressly renounced this groundless speculation on February 2, 2024, Deputy Munsee recklessly contended that Snapchat messages posted by ML in the middle of the night of December 18-19, 2023 showed that their recipients, including James, "ha[d] knowledge of all the thefts."

13. None of the messages at issue were written by or solicited by James, nor had he responded to any of them. At the time the messages referenced by Deputy Munsee were sent, James was sound asleep in his bed at home. To this day, James is unsure of the contents of those messages.

---

[3]In juvenile criminal proceedings in Virginia, a petition–form DC 511–is the functional equivalent of a warrant application. The signature of an intake officer on a petition initiates the process of arresting the juvenile.

[4]See Exhibit 1.

14. It is common knowledge that receipt of another person's posts in real time does not suggest that the recipient had advance notice of the matter at issue. The opposite is typically true: such posts typically inform people of something they don't already know.

15. ML's messages provided grounds for further investigation to determine whether any of its recipients, including James, were in fact involved in the criminal activity at issue. Such further investigation reasonably would have included contacting James's father to ascertain his son's whereabouts the previous night which would have totally eliminated James from all suspicion. Well settled Fourth Amendment law counseled, however, that ML's Snapchat postings did not, by themselves, establish probable cause to believe the recipients of the posts had committed any crime so as to justify an arrest.

16. Notwithstanding, defendant Munsee decided to secure James's arrest. This was a decision no reasonable officer would make, as under clearly established law there was woefully inadequate evidence to support probable cause that James had committed any crime.

17. On December 19, 2023, Deputy Munsee swore out eleven petitions to the Spotslyvania Juvenile and Domestic Relations Court, charging James with eleven separate criminal offenses, including three felonies, all arising out his alleged complicity in the theft of cars and personal property. These petitions were accompanied by Deputy Munsee's sworn statement of facts, within which Deputy Munsee falsely and baselessly swore that ML's messages "directly showed" that James "[had] knowledge of all the thefts."

18. Relying on Deputy Munsee's sworn statement, the intake officer,[5] in addition to issuing these eleven petitions, issued a detention order stating that clear and convincing evidence existed James would present a clear and substantial threat to persons or property unless he was immediately taken into custody and detained.  This claim, to which Deputy Munsee glibly swore, was as false as it was palpably baseless.

19.  Deputy Munsee presented his petitions to the intake officer of the Spotsylvania Juvenile and Domestic Relations Court.[6]  It is unknown to James if Deputy Munsee showed ML's allegedly inculpating messages to the intake officer, who apparently did not inquire whether having been sent a message in the middle of the night about a given matter constituted probable cause to believe that the presumptively sleeping recipient was criminally involved in said matter.  In reliance on defendant Munsee's presentation and in deference to his position as a deputy sheriff, the intake officer rubber-stamped his petitions as requested and issued an order for James's detention.

James's Arrest and its Aftermath

20.  At around 10 AM on December 21, 2023, Deputy Munsee and another deputy came to the Boateng home.  School was out for Christmas break and James was sleeping.

21.  When James's father opened the door, Deputy Munsee showed him a photo of James and asked if James was his son. When Mr. Boateng replied yes, Deputy Munsee told him "your son is involved with stolen cars."

---

[5]In Virginia, intake officers in Juvenile and Domestic Relations Courts, who are responsible for approving or denying criminal petitions based on the presence of probable cause, are not required to have any formal legal training or law degree.

22.  The deputies accompanied Mr. Boateng to James's bedroom, where they woke him and told him he was being charged with eleven crimes.  Deputy Munsee arrested James in his bedroom, and brought him immediately to the local juvenile detention facility.

23.  After being held overnight for a crime he did not commit, on December 22, 2023 James was brought before a judge of the Juvenile and Domestic Relations Court who released James to home confinement, with the requirement that he wear an ankle monitor at all times. This he wore until February 2, 2024.

29.  The consequences for James of Deputy Munsee's recklessness were devastating. Barely one month earlier his mother had died, and he and his father were in the early stages of processing their grief caused by her passing.  James's arrest was mortifying to him.  He had never had any problems with the law, never engaged in or been accused of criminal activity, never been arrested, never been warned by a law enforcement officer, and never been detained or stigmatized.  He was shocked, frightened and humiliated when this occurred at the hands of Deputy Munsee.  The manner in which he was summarily accused, arrested and incarcerated, knowing that he was innocent of the charges Deputy Munsee had brought against him, had a damaging effect on his faith in the integrity of police officers, and was indicative of the perils and powerlessness too often faced by teenagers of color at the hands of law enforcement, given how easily he and the two other recipients of ML's Snapchat messages on December 19th – both of whom were also teenagers of color – could be arrested and accused of multiple serious offenses they had not committed.  Following his arrest, the requirement that James wear an ankle monitor became a source of daily taunts, accusations and humiliation for him at school.  He worried incessantly about the effect Deputy Munsee's accusations and the resulting proceedings

would have on his educational future.  He also worried about his father, newly *sans* spouse,  and the turmoil he was going through as he watched his son accused and stigmatized.

24.  On February 2, 2024, James was called to court for his first hearing on the charges against him.  On this occasion, the prosecutor informed the court that Deputy Munsee had confirmed that "the defendant is no longer suspected of being involved in the cases" and that "there is now a lack of probable cause to have Mr. Boateng charged."  The charges against James were *nolle prossed* as baseless.

25.  Defendant Munsee's decision to charge James as he did, within hours after arresting ML and based on woefully insufficient evidence, was reckless, unprofessional, contrary to common standards of law enforcement, and in violation of clearly settled law governing probable cause. A reasonable officer would have used the information gathered from ML's messages to engage in further investigation before arresting and humiliating a sixteen-year-old child with no record of offenses.  The result would have been exoneration, as in fact occurred.

26.  As a result of Deputy Munsee's recklessness, James's rights were violated, he was falsely arrested and charged, stigmatized, and made to suffer severe emotional distress.  His criminal defense also cost his father money in legal fees.

Causes of Action

Count I:  Fourth Amendment Violation: Unreasonable Seizure

27.  By his actions set forth above, Deputy Munsee unreasonably seized James in violation of the Fourth Amendment.

## Count II:  False Arrest / False Imprisonment

32.  By his actions set forth above, defendant Munsee caused James to suffer false arrest and false imprisonment, in violation of the common law of Virginia.

## Count III:  Malicious Prosecution

33.  By causing James to be charged with crimes in court as set forth above, where all of said charges were resolved in James's favor, Defendant Munsee caused James to suffer malicious prosecution in violation of Virginia common law.

## Count IV: Defamation/ Defamation *Per Se*

34.  By falsely accusing James of crimes and also of being a threat to persons and property, all in the absence of probable cause for same, to James's father, to the court intake officer, and to all persons within the ambit of the juvenile proceeds he recklessly opened against James, Deputy Munsee engaged in defamation and defamation *per se* of James, without privilege or justification.

*

Wherefore, James Boateng seeks the following relief against Deputy Munsee:

* An award of compensatory damages in an amount appropriate to the proof at trial,

* An award of punitive damages in an amount appropriate to the proof at trial,

* An award of his reasonable attorneys fees and costs; and

* Such other relief as the court deems just.

James Boateng requests trial by jury.

Respectfully submitted,

JAMES BOATENG,

By counsel

Dated:  April 15, 2025

Counsel for Plaintiff:


//s// Victor M. Glasberg
Victor M. Glasberg, #16184
Abigail S. Grand, #100578
Victor M. Glasberg & Associates
121 S. Columbus Street
Alexandria, VA  22314
(703) 684-1100 / Fax: 703-684-1104
vmg@robinhoodesq.com
agrand@robinhoodesq.com

**BoatengGodwin\Pleadings\2025-0415-AmendedComplaint**